D. Richard TRAGER et al., Plaintiffs,

v.

PEABODY REDEVELOPMENT
AUTHORITY, Defendant.

Civ. A. No. 72–3919–C.

United States District Court,
D. Massachusetts.

Dec. 6, 1973.

John T. Ronan, Salem, Mass., for plaintiff.

Charles J. Speleotis, Swampscott, Mass., for defendant.

Andrew M. Wolfe, Asst. Atty. Gen., Boston, Mass., Amicus Curiae.

Before CAMPBELL, Circuit Judge, and CAFFREY and JULIAN, District Judges.

## OPINION

CAFFREY, Chief District Judge.

This is a civil action in which plaintiffs seek to enjoin defendant from taking a parcel of real property, owned in common by plaintiffs, for urban renewal until plaintiffs are provided with notice of and an opportunity to be heard in a proceeding to determine if the area which includes plaintiffs' property is blighted. Plaintiffs contend that a prior determination of blight by the Peabody City Council pursuant to M.G. L. ch. 121 § 26ZZ was in violation of the Fifth and Fourteenth Amendments to the Constitution because it was a deprivation of property without notice or opportunity to be heard. Jurisdiction is alleged under 42 U.S.C.A. § 1983 and 28 U.S.C.A. § 1331. Because an injunction restraining the enforcement of state statute on grounds of unconstitutionality is sought, a three-judge district court was convened under 28 U.S.C.A. §§ 2281 and 2284.

Plaintiffs are citizens of Massachusetts and residents of Middlesex County. Defendant Peabody Redevelopment Authority (Authority) is a public body, corporate and politic, created pursuant to M.G.L. ch. 121B § 3 (formerly ch. 121 § 26K) for purposes of clearing substandard, decadent or blighted areas in a program of urban renewal. Plaintiffs owned about 29 acres of vacant land in Peabody.

In March 1969, the Authority formulated a plan for a state-aided urban renewal project to be known as the Centennial Industrial Park. The plan encompassed more than 300 acres of land and included plaintiffs' property. Pursuant to M.G.L., ch. 121 § 26ZZ (now ch. 121B § 48), a hearing on the plan was held before the Peabody City Council on June 26, 1969. Notice of the hearing was published in two Essex County newspapers on June 13 and 20, 1969, in compliance with ch. 121 § 26ZZ. Plaintiff Trager had conversations with the Executive Director of the Authority concerning the project *prior* to the hearing and immediately thereafter and, in fact, has been in constant communication with the Executive Director to the present time. Plaintiff Cross was also in contact with the Executive Director in the time period after the June City Council hearing and was informed of the Authority's activities, although he appears not to have had notice prior to the hearing. (Affidavit of Allen J. Perakis, Executive Director, Peabody Redevelopment Authority, ¶ 8.) In August 1969, the project was approved by the Authority, the City Council and the Mayor of Peabody. Meanwhile, in 1969, in an unrelated proceeding, the Commonwealth of Massachusetts expressed its intent to take plaintiffs' land for a proposed highway.

On March 31, 1970, the Peabody City Council approved the bond order for the financing of the project. After a number of voters objected to the bond order, a special election was held in the City of Peabody, and the bond order was approved by the voters in June of 1970. Several taxpayers' suits objecting to the project and the special election were filed in the fall of 1970 in the Essex Superior Court. Demurrers to the claims were filed by the defendant and were allowed. On appeal to the Supreme Judicial Court, the same questions were

raised as are involved in the instant case. In May 1972, the Supreme Judicial Court ruled that the allegations in the complaint were vague and conclusory and sustained the demurrers without reaching the merits of the questions presented. Saraceno v. City of Peabody, 1972 Mass.Adv.Sh. 905, 906–907, 282 N. E.2d 389. Argument at the hearing before this three-judge court indicated that plaintiffs herein were cognizant of the state court proceedings and the issues presented therein.

In August 1972, the Commonwealth went forward with the aforementioned highway taking. However, only about 24 of plaintiffs' 29 acres were appropriated, leaving the plaintiffs with about 5 acres of "blighted" land in the proposed project area. There is presently an action in Essex Superior Court concerning the amount of damages due to plaintiffs on account of the Commonwealth's taking. Plaintiffs filed the instant suit in December 1972.

■■ Governmental action short of actual acquisition of property may be a constructive taking or an inverse condemnation if such action deprives the property owner of all or most of his interest in the subject matter. Griggs v. Allegheny County, 369 U.S. 84, 90, 82 S. Ct. 531, 7 L.Ed.2d 585 (1962); United States v. Kansas City Insurance Co., 339 U.S. 799, 810, 70 S.Ct. 885, 94 L.Ed. 1277 (1950); United States v. General Motors Corp., 323 U.S. 373, 378, 65 S.Ct. 357, 89 L.Ed. 311 (1945). However, the mere determination by a governmental authority that a particular area of real estate is "blighted" as an initial step in an urban renewal project is not a constructive taking. This is so even though the determination of blight has an adverse effect on the value of the property. The initial steps in any condemnation proceeding, although such steps diminish the value of the property concerned, themselves do not require compensation. Danforth v. United States, 308 U.S. 271, 285, 60 S.Ct. 231, 84 L.Ed.

240 (1939); Woodland Market Realty Co. v. City of Cleveland, 426 F.2d 955, 958 (6 Cir. 1970); 23 Tracts of Land v. United States, 177 F.2d 967, 969–970 (6 Cir. 1949); Town of Hingham v. United States, 161 F. 295, 299–300 (1 Cir. 1908); Manson v. Williams, 153 F. 520, 525 (1 Cir. 1907); Government of the Virgin Islands v. 50.05 Acres of Land, 185 F.Supp. 495, 498 (D.V.I.1960).

■■ The procedural due process requirements of notice and hearing attach themselves wherever there is need for an adjudicative hearing, i. e., when an individual or a small number of persons suffer a particular loss under circumstances peculiar to each individual or group. However, where a hearing body, as a delegatee of the Legislature, is weighing general information and ideas affecting relatively large numbers of people, that body is considering *legislative* facts. At such a legislative hearing, the hearing body is determining the best overall public policy and is not concerned with the particular problems of individuals. These legislative hearings do not require notice of an opportunity to be heard to individuals whose rights are affected as part of an overall scheme to benefit society in general. Hahn v. Gottlieb, 430 F.2d 1243, 1246–1249 (1 Cir. 1970); Green Street Ass'n. v. Daley, 373 F.2d 1, 6–7 (7 Cir. 1972); Davis, Requirement of a Trial-Type Hearing, 70 Harv.L.Rev. 193, 206–07 (1956).

■ In eminent domain cases, the broad decision to condemn an area for a public purpose, e. g., urban renewal in a blighted area, is legislative and does not require an adjudicative hearing with notice and an opportunity to be heard provided to each individual affected. This is not to say individuals are afforded no opportunity for redress. Due process for individuals is provided in the determination of how much each individual should be compensated for his particular piece of property. This determination is adjudicatory and each owner is entitled to his day in court. United States

v. Carmack, 329 U.S. 230, 247, 67 S.Ct. 252, 91 L.Ed. 209 (1946); Bailey v. Anderson, 326 U.S. 203, 205, 66 S.Ct. 66, 90 L.Ed. 3 (1945); Bragg v. Weaver, 251 U.S. 57, 58–59, 40 S.Ct. 62, 64 L.Ed. 135 (1919); Powelton Civic Home Owners Ass'n v. HUD, 284 F.Supp. 809, 829–830 (E.D.Pa.1969); Gart v. Cole, 263 F.2d 244, 251 (2 Cir.), cert. denied 359 U.S. 978, 79 S.Ct. 898, 3 L.Ed.2d 929 (1959).

█ In the instant case, the decision of the City Council that the Centennial Industrial Park area was blighted and suitable for urban renewal was based on the general public interest. The overall 300 acre area was considered and not the 5 acre portion of the plaintiffs. Plaintiffs have an opportunity for their day in court when the Authority determines how much they should be compensated. But at the point in the process of condemnation where an appropriating agency makes a social policy determination that a geographical area is blighted, due process does not require that individual land owners within that area be given notice of and an opportunity to be heard at such deliberations.

For the above reasons, we conclude that plaintiffs' complaint fails to state a cause of action upon which relief can be granted and that defendant's motion to dismiss pursuant to Rule 12(b)(6) should be granted. In the alternative, there appears to be no genuine issue as to any material fact, and construing defendant's motion as one for summary judgment, defendant is entitled to judgment as a matter of law.

█ Judges Campbell and Caffrey, but not Judge Julian, are of opinion that there exists a second separate and additional ground for dismissing the complaint, namely, the doctrine of *laches,* which they believe requires dismissal. See Valmor Products Co. v. Standard Products Corp., 464 F.2d 200, 204 (1 Cir. 1972).

Accordingly, on the basis of the foregoing the complaint is dismissed.