UNITED STATES of America ex rel. TENNESSEE VALLEY AUTHORITY, Plaintiff-Appellee,

v.

TWO TRACTS OF LAND CONTAINING a TOTAL OF 146.4 ACRES, MORE OR LESS IN LOUDON COUNTY, TENNESSEE, et al., Defendants-Appellants.

No. 75–1495.

United States Court of Appeals, Sixth Circuit.

Argued Feb. 10, 1976.

Decided April 6, 1976.

**1084**

J. Granville Clark, Russellville, Ky., W. P. Boone Dougherty, Knoxville, Tenn., for defendants-appellants.

Robert H. Marquis, Gen. Counsel, Tennessee Valley Authority, Beauchamp E. Brogan, Beverly S. Burbage, Knoxville, Tenn., for plaintiff-appellee.

Before PHILLIPS, Chief Judge, and EDWARDS and MILLER, Circuit Judges.

PHILLIPS, Chief Judge.

This is an appeal from the judgment of District Judge Robert L. Taylor upholding the power of the Tennessee Valley Authority to condemn two tracts of land for use in the Tellico Dam project in Tennessee. Also challenged on appeal is the amount of damages allowed as just compensation for the taking of the land. We affirm.

The condemnation proceeding was filed under the Tennessee Valley Authority Act of 1933 as amended.[1] Pursuant to Fed.R. Civ.P. 71A(h), Judge Taylor referred the issue of compensation to three commissioners, who conducted a full evidentiary hearing and determined that compensation should be allowed in the amount of $59,000. Judge Taylor adopted the report of the commission and entered judgment accordingly.

The principal contention on appeal is that the land condemned is not needed for the construction, operation and maintenance of Tellico Dam and Reservoir and that TVA abused its discretion and is acting arbitrarily, capriciously and in bad faith in the condemnation of the land in question. Specifically it is asserted that the land is intended to be used for recreational and industrial purposes and some of it will be resold for such purposes at some future date.

■ It is well settled that the necessity, expediency, location and extent of taking property for a public purpose are legislative and administrative questions and that the scope of judicial review is extremely narrow. *Berman v. Parker,* 348 U.S. 26, 35, 75 S.Ct. 98, 103, 99 L.Ed. 27, 39 (1954); *United States ex rel. TVA v. Welch,* 327 U.S. 546, 551–52, 66 S.Ct. 715, 717, 90 L.Ed. 843, 847–848 (1946); *United States v. Agee,* 322 F.2d 139, 141 (6th Cir. 1963).

■ It is well established that in eminent domain proceedings the United States is not limited to precisely the amount of property which will be physically occupied by the public. In the construction of a dam and reservoir, as in the present case, the TVA is not restricted to taking only the land which actually will be submerged if additional land is required for a public pur-

1. 16 U.S.C. §§ 831–831dd (1970 Supp. III, 1973).

pose. *Welch*, 327 U.S. at 554, 66 S.Ct. at 718, 90 L.Ed.2d at 849; *Brown v. United States*, 263 U.S. 78, 81, 44 S.Ct. 92, 101, 68 L.Ed. 171, 180 (1923); *Agee*, 372 F.2d at 143; *United States v. Certain Real Estate Lying on the South Side of Board Street*, 217 F.2d 920, 924 (6th Cir. 1954); *Starr v. Nashville Housing Authority*, 145 F.Supp. 498 (M.D.Tenn.1956), aff'd, 354 U.S. 916, 77 S.Ct. 1378, 1 L.Ed.2d 1432 (1957).

The Tellico Dam project has been before this court in previous litigation. Reference is made to our earlier decisions for a description of its scope and purposes. *See* Environmental Defense Fund, 492 F.2d 466 (1974), aff'g, 371 F.Supp. 1004 (E.D.Tenn. 1973); and 468 F.2d 1164 (6th Cir. 1972), aff'g, 339 F.Supp. 806 (E.D.Tenn.1972).

The record shows that the scope and purposes of the Tellico Dam project were discussed in Congress before the initial appropriation authorizing the project, as well as afterwards. During the 1966 hearings before the House Appropriations Committee, TVA furnished a statement setting forth in detail the scope and purposes of the project, including plans for resale and development of some of the land to be condemned. The statement contained the following summary:

### SHORELINE LANDS

TVA believes the Tellico project will contribute greatly to the industrial development of the area and *proposes to follow a land acquisition pattern which will assure that sites needed for industry are reserved for that purpose. The amount of land acquired by TVA for the project is expected to be about twice the area inundated, as has been the case in most other reservoirs.* However, advance planning will assure a more effective use of the shoreline lands than in the past. Plans for the use of these lands will be developed in full cooperation with State and local officials to insure that sites best suited for industry are not dissipated for less vital purposes and that there are adequate provisions for public and private recreation, homesites, and other purposes.

*The plan to acquire key lands for industrial and recreation development and resell them as demand for such property increases reflects the public purpose of the project in meeting the serious need for measures to speed growth in employment and general economic development in this part of eastern Tennessee.*

*Proceeds from the sale* of lakeshore lands, presently estimated at $10,900,000, *would be returned to the U.S. Treasury as an offset against the cost of the project.*[2] (Emphasis added.)

▮ Every year since 1966 Congress has appropriated additional funds for the Tellico project.

Judge Taylor held as follows:

The Court has carefully examined the facts and law before it and concludes that, while defendants are correct in their proposition that TVA's action is in fact subject to judicial review, it cannot say that TVA is presently acting in an arbitrary and capricious manner simply because the property presently being condemned may ultimately be resold to a private party at some future date.

The Court, having sat in previous review of this project, cannot conclude that the industrial development of the region surrounding the Tellico floodline is so remote from the project's purpose as to be designed for profit making purposes alone. See generally, *Environmental Defense Fund v. Tennessee Valley Authority*, 371 F.Supp. 1004 (E.D.Tenn.1973), aff'd, 492 F.2d 466 (6th Cir. 1974). Contrary to defendant's argument and his supporting affidavit Congress' object in its acquisition and resale program was founded upon public purpose:

"The plan to acquire key lands for industrial and recreation development and resell them as demand for such property increases reflects the public purpose of the project in meeting the serious need

---

2. Hearings on Public Works Appropriations for 1967 before a Subcommittee of the House Committee on Appropriations, 89th Cong., 2d Sess., Pt. 2, 761–66 at 765 (1966).

for measures to speed growth in employment in this part of eastern Tennessee." While defendant argues that industrial growth is not needed in this region, it is not this Court's position to reappraise the wisdom of congressional policy in this regard. "The role of the judiciary in determining whether that power [of eminent domain] is being exercised for public purpose is an extremely narrow one." *Berman,* supra, 348 U.S. at 32, 75 S.Ct. at 102, 99 L.Ed. at 37. Cf. *United States v. 554 Acres of Land,* 314 F.Supp. 273 (E.D. Tenn.1969).

The decision of the District Court is supported by the authorities heretofore cited in this opinion. *See also United States ex rel. TVA v. Two Tracts of Land,* 456 F.2d 264 (6th Cir. 1972), *cert. denied,* 409 U.S. 887, 93 S.Ct. 109, 34 L.Ed.2d 143 (1972); *Illinois Central Railroad Co. v. TVA,* 445 F.2d 308 (6th Cir. 1971); *Goodpasture v. TVA,* 434 F.2d 760 (6th Cir. 1970).

Appellants also contend that the award of $59,000 made by the Commission and approved by the District Court is inadequate. The record shows that at the time of the filing of the declaration of taking, TVA deposited $43,550 as its estimate of just compensation. TVA's appraisers valued the land at from $42,000 to $43,075. The landowners and their witnesses placed valuations on the property from $79,800 to $159,120. Thus the judgment is within the range of the evidence.

We hold that the District Court did not commit reversible error in the amount awarded for damages.

All other contentions made by appellants have been considered and found to be without merit.

The judgment of the District Court is affirmed.